### WESTMINSTER.

Where a meeting for the choice of a representative was held under a warrant containing only one article, namely, "to chose a representative," it was held, that the town had no authority to vote not to send a representative, and that an election after such a vote was valid. [But see the opinions of the justices of the supreme judicial court, 1810—11, and 1815—16.]

THE election of Josiah Puffer, returned a member from the town of Westminster, was controverted by Abner Holden and others, of that town,[2] upon the following facts, stated in a certificate of the town clerk, accompanying their petition, namely, that the warrant for calling the meeting contained only one article: " To chose a representative ;" but that at the meeting for the election, it was made a question, whether the town would send a representative or not, and the vote being put, it was declared by Mr. Puffer, who as one of the selectmen presided at the meeting, to be decided in the affirmative. The vote being disputed, the meeting was divided, and it was again declared in the affirmative, and the inhabitants were requetsed to bring in their votes for a representative. The vote was disputed a third time, and the meeting being again divided, and the votes counted by the moderator, he said " they have got the vote not to send, but I have declared it to be a vote to send, and therefore bring in your votes." The votes were then cast, and Mr. Puffer had twenty-one and two other persons one each. Mr. Puffer then declared himself chosen a representative.

The petition and other documents were referred to Messrs. *Parsons, Henshaw, Sewall, Bowdoin,* and *Holmes,* who subsequently reported, as their opinion, " that the proceedings of the town meeting, at which the member is said to have been elected, were irregular and illegal, and that therefore his seat

[1] 11 J. H. 43, 49.    [2] Same, 13.

in the house ought to be vacated:" which report, being read and debated, the question was put whether the house would agree to the same, and was determined in the negative.[1]

[The election of Mr. Puffer was supported by Joseph Miller and others, in a memorial, in which they alleged, that, as there was no article in the warrant, for determining whether the town would or would not be represented, no vote could be legally taken on that question. The memorialists also asserted, that "the principle held out and acted upon, that every town has a right to vote they will not send a member to the general court, strikes at the very nerves of the constitution, and throws the people into anarchy at once." At this period, the house rigorously exercised the power, conferred upon it by the constitution, (chap. i., sec. iii., art. ii.) of imposing fines upon such towns as neglected to chose and return members agreeably to it sprovisions; and it was quite natural, therefore, that it should be thought unconstitutional, to pass a solemn vote not to do what the constitution seemed to require, and what a town would be liable to punishment for not doing. It may perhaps be for the reason suggested by the memorialists, that the house thought proper to reject the report of the committee. It is now settled, both by the opinion of the supreme judicial court, and by decisions of the house, that towns have a right, *in their corporate capacity*, to determine whether they will be represented or not.[2]]

[1] 11 J. H. 26.
[2] See the opinions of the court in the years 1810—11, and 1815—16.